# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROBERT VENCENT VASQUEZ,

      Plaintiff,

vs.                                                    No. CIV 22-0593 JB/DLM

NEW MEXICO DEPARTMENT OF
CORRECTIONS; ALISHA TAFOYA-
LUCERO, in her individual and official
capacity; THE WARDEN OF THE
PENITENTIARY OF NEW MEXICO;
DAVID S. FAJARDO or SHARLENE
HAGERMAN, in her individual and official
capacity; THE WARDEN OF GCCF OF
SANTA ROSA, JULIAN MARQUEZ, in his
individual and official capacity;
CORRECTIONS OFFICERS ANGEL
SANCHEZ and ANDRES SANCHEZ, in
their capacity as New Mexico Department of
Corrections Officers and in their individual
capacities, and DANIEL SEDILLO, in his
individual and official capacity,

      Defendants.

## <u>MEMORANDUM OPINION</u>[1]

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss Amended

Complaint for Violation of Constitutional Rights and Request for Declaratory and Injunctive

Relief as it Pertains to the Fourteenth and Eighth Amendment Violations and Discrimination Under

---

[1] On September 29, 2023, the Court entered an Order granting the Defendants' Motion to Dismiss Amended Complaint for Violation of Constitutional Rights and Request for Declaratory and Injunctive Relief as it Pertains to the Fourteenth and Eighth Amendment Violations and Discrimination Under the Americans with Disabilities Act and for Qualified Immunity, filed October 10, 2022 (Doc. 16). <u>See</u> Order at 21, September 29, 2023 (Doc. 45). In the Order, the Court stated that it will "issue . . . a Memorandum Opinion at a later date more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion is the promised opinion.

the Americans with Disabilities Act and for Qualified Immunity, filed October 10, 2022 (Doc. 16)("Motion").  The Court held a hearing on March 22, 2023.  <u>See</u> Clerk's Minutes at 1, filed March 22, 2023 (Doc. 40).  The issues presented are: (i) whether Plaintiff Robert Vencent Vasquez pleads facts sufficient to state a claim for violations of his rights under the Fourteenth and Eighth Amendments to the Constitution of the United States as a result of the Defendants' alleged deliberate indifference in exposing Vasquez to a substantial risk of harm and by requiring inmates to use an ineffective grievance system to lodge complaints about their safety and wellbeing; and (ii) whether Vasquez pleads facts sufficient to state a claim for discrimination under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, as a result of the Defendants' alleged failure to assist him with the grievance process.  The Court concludes that: (i) Vasquez has not stated a claim for violation of his Fourteenth and Eighth Amendment rights, because he has not pled plausibly sufficient facts to state a claim that any Defendant violated his clearly established Constitutional rights in relation to the inmate attack he suffered nor in relation to the prison grievance system; and (ii) Vasquez has not stated a claim under the Rehabilitation Act, because he has not plausibly pled that he was discriminated against based on his disability.  Accordingly, the Court grants the Motion.

## **FACTUAL BACKGROUND**

The Court takes its facts from the Plaintiff's Amended Complaint for Violation of Constitutional [sic] Rights and Request for Declaratory and Injunctive Relief as it Pertains to the Fourteenth and Eighth Amendment Violations and Discrimination Under the Americans with Disabilties [sic] Act, filed September 12, 2022 (Doc. 11)("FAC").  The Court first describes Vasquez' allegations as they pertain to the assault he experienced at the hands of fellow inmates, and then outlines Vasquez' allegations relating to the New Mexico Corrections Department

grievance process.

**1.**     **Vasquez is Transferred to Guadalupe County Correctional Facility, Where He Interacts with Defendants Angel Sanchez and Andres Sanchez and is Assaulted by Fellow Inmates.**

Vasquez is currently incarcerated by the Corrections Department.  See FAC ¶ 6, at 3. Vasquez "has been diagnosed with bi-polar disorder, PTSD, Major Depressive Disorder (MOD), Anti-social disorder," and "functions below a 6th grade level in spelling, reading and math."  FAC ¶ 44, at 17.   In June, 2022, Vasquez requested a transfer "from a level four to level three facility," because corrections officers had informed Vasquez' fellow inmates that he was a "rat" -- allegedly in retaliation for the fact that Vasquez had filed grievances against several corrections officers including Defendants Angel Sanchez and Andres Sanchez -- which resulted in Vasquez receiving threats from fellow inmates.  FAC ¶ 12, at 4.  On June 24, 2022, Vasquez was moved from the Penitentiary of New Mexico ("PNM") to the Guadalupe County Correctional Facility ("Guadalupe Correctional"),[2] where corrections officers Angel Sanchez and Andres Sanchez met him.  See FAC ¶¶ 13-14, at 4-5.  Both Angel Sanchez and Andres Sanchez were involved in a separate incident of alleged use of excessive force against Vasquez on August 4, 2020, that resulted in Vasquez filing grievances against the officers involved, and then subsequently filing a federal lawsuit against both corrections officers.  See FAC ¶¶ 15-17, at 5-6.  Upon Vasquez' arrival at Guadalupe Correctional on June 24, 2022, Angel Sanchez and Andres Sanchez asked Vasquez if "he was going to have 'problems' because he was at the 'APA[3],'" and Vasquez informed the corrections

---

[2]Although Vasquez does not define the acronyms in his FAC, the Court understands Vasquez to refer to the Guadalupe County Correctional Facility where he uses "GCCF," and the Court understands Vasquez to refer to the Penitentiary of New Mexico where he uses "PNM."

[3]Although Vasquez does not define the "APA" and the Court has been unable to determine what the acronym stands for, the Court understands Vasquez' use of the APA to refer to the

officers that "that there was fallout from the Clayton issue, and that the reason that he was placed at 'APA' was because he had been stabbed at NENMDF/Clayton previously." FAC ¶ 18, at 6-7. Angel Sanchez and Andres Sanchez questioned Vasquez about the pending lawsuit and told him "'that they all needed to put the matter 'behind them.'" FAC ¶ 22, at 8. Vasquez' FAC alleges that, "[u]pon opinion and belief in retaliation for Plaintiff filing a law suit [sic] against the Sanchez brothers . . . the Sanchez brothers informed other prisoners in housing Unit 1-E Pod at GCCF in Santa Rosa that Plaintiff was a 'rat.'" FAC ¶ 19, at 7.

"Within an hour" of his interaction with Angel Sanchez and Andres Sanchez, FAC ¶ 19, at 7, Vasquez was assaulted by other inmates and "suffered serious stab wounds to the back of his head, back and neck," FAC ¶ 37, at 12. The FAC alleges that Angel Sanchez and Andres Sanchez "purposely put Plaintiff in a Unit where Plaintiff's life was threatened in retaliation for the law suit [sic] that Plaintiff had filed against them." FAC ¶ 18, at 7. See FAC ¶ 48, at 21 ("The fact that the Sanchez brothers processed Plaintiff at Santa Rosa and that Plaintiff shortly thereafter was stabbed in the back of the head, neck and back is at a minimum suspect timing for Plaintiff who was almost immediately stabbed after being processed and placed in a cell block by the Sanchez brothers."). Although Vasquez "pressed the emergency call button" when the initial assault began, assistance did not arrive "for approximately twenty minutes," by which time Vasquez had suffered an additional beating. FAC ¶ 23, at 8. Vasquez alleges that Angel Sanchez and Andres Sanchez "retaliated against [Vasquez] by having him stabbed and beaten and then by refusing to answer [Vasquez'] request for help while he was being beaten." FAC ¶ 38, at 13. See FAC ¶ 24, at 8 ("The Sanchez brothers acted with deliberate indifference to Plaintiff's safety by ignoring the panic

---

Corrections Department's mental health unit. See FAC ¶ 44, at 17 ("Plaintiff has been housed in the NMCD's (APA) Mental Health Unit in Santa Fe . . . .").

button and allowing Plaintiff to get beaten and stabbed.").  The FAC alleges that Defendants Julian Marquez and Alisha Tafoya-Lucero "allowed the Sanchez brothers to retaliate against the Plaintiff . . . by not taking procedures at the prison to prevent violent assaults by inmates against other inmates, and by not taking a review of the litigation history between Plaintiff and the Sanchez brothers."  FAC ¶ 21, at 7-8.  See FAC ¶¶ 35-36, at 11-12 (alleging that Tafoya-Lucero and Marquez "clearly did not supervise the Sanchez brothers" on the day of Vasquez' assault and "were personally aware that . . . employee correction officers use inmates to beat other inmates").

### 2.   Vasquez Files Grievances and Informal Complaints Against Guadalupe Correctional and Defendant Daniel Sedillo.

On June 29, 2022, after his release from the hospital where he was treated for injuries suffered during the assault, Vasquez was transferred back to PNM, where he "filed an inmate informal complaint against GCCF . . . for Failure to Protect, Understaffing, and Retaliation."  FAC ¶ 25, at 8.  "It was the required policy of NMCD for the Grievance to be filed at PNM with the PNM Grievance Officer Daniel Sedillo, who was required to forward the grievance to the Grievance Officer at GUADALUPE CORRECTIONAL in Santa Rosa, New Mexico."  FAC ¶ 26, at 9.  Although the informal complaint was filed appropriately within five working days of the incident as Corrections Department policy requires, "Grievance Officer Daniel Sedillo rejected the grievance as not timely filed" and did not forward it to Guadalupe Correctional.  FAC ¶ 26, at 9. See FAC ¶ 26, at 9 ("Daniel Sedillo . . . didn't have jurisdiction to deny the grievance but was required to forward it to GCCF . . . .").  Despite that Sedillo "was required under NMCD policy to provide Plaintiff within five (5) days notice of receipt of the grievance a confirmation of receipt" and that "Sedillo admitted that he had received the emergency grievance" when Vasquez originally filed it, Sedillo did not provide Vasquez with a receipt.  FAC ¶ 27, at 9-10.  Vasquez "never

received a response to the informal complaint he filed."  FAC ¶ 29, at 10.  In addition, "when he got no response to the informal complaint within ten (10) working days," Vasquez "filed an emergency grievance pursuant to NMCD Policy CD-150501 A.4, 6."  FAC ¶ 30, at 10.  Vasquez alleges that Sedillo's dismissal of and failure to respond to Vasquez' initial complaint is exemplary of a grievance process "that is overly complex [and] confusing," "allows NMCD to deny grievances based on hyper-technical procedural defects rather than the merits," and impedes plaintiffs who suffer from mental illness "from exhausting their administrative remedies."  FAC ¶ 52, at 23.  As a result of Officer Sedillo's perceived "inappropriate behavior," Vasquez "filed a grievance with the Warden of PNM Sharlene Hagerman and/or David S. Fajardo."  FAC ¶ 27, at 9.  Also "[o]n July 29, 2022," the same day that Vasquez returned from the hospital and filed his initial grievance against Sedillo, Vasquez filed a Department Appeal, N-22-07-08 indicating that all informal complaints and grievances were timely filed pursuant to Corrections Department Policy CD-150501 A. 1, (a) and (Emergency Procedure) 1."  FAC ¶ 27, at 9.  See FAC ¶ 30, at 10.

## PROCEDURAL BACKGROUND

The FAC names as Defendants the Corrections Department; Tafoya-Lucero, the Corrections Department Secretary; Marquez, who "runs the prison facility in Santa Rosa, New Mexico, known as GCCF"; "David S. Fajardo or Sharlene Hagerman"; Sedillo, a "PNM Grievance Officer"; and Angel Sanchez and Andres Sanchez.  See FAC at ¶¶ 7-11, at 3-4.  Each individually named Defendant is named as a Defendant in their official and individual capacity.  See FAC ¶¶ 7-11, at 3-4.  The FAC states two claims for relief.  See FAC ¶¶ 56-68, at 35-43.  First, Vasquez alleges the Defendants violated his rights under the Eighth and Fourteenth Amendments in relation to the assault Vasquez suffered and the inadequate grievance procedures.  See FAC ¶¶ 56-59, at 35-38.  Vasquez alleges that Angel Sanchez and Andres Sanchez acted "deliberately indifferent to

[Vasquez'] rights to be free from excessive use of force" by "encouraging inmates" to attack Vasquez "in retaliation" for his pending lawsuit against them and that Defendants Marquez and Tafoya-Lucero "were aware that the beatings did and are occurring," but failed "to take measures to abate the risk of the serious injury."  FAC ¶ 57, at 35-36.  In addition, Vasquez alleges that "[t]he grievance system maintained by the NMCD violates the Eighth Amendment because it did not protect and does not protect inmates from cruel and unusual punishment."  FAC ¶¶ 57-58, at 35-37.  Second, Vasquez brings a claim under the Rehabilitation Act arising from the Corrections Department's alleged failure to provide inmates with mental disabilities an effective grievance system or with staff to assist with the process.  See FAC ¶¶ 60-58, at 39-43.  Vasquez seeks compensatory and punitive damages under 42 U.S.C. § 1983, and declaratory, injunctive relief, and damages under § 504 of the Rehabilitation Act.  See FAC ¶ 69, at 43-45.

     1.    **The Defendants' Motion**.

     The Defendants move to dismiss Vasquez' claims under rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Motion at 1.  After summarizing Vasquez' allegations and providing the relevant legal standard for rule 12(b)(6) motions, see Motion at 2-9, the Defendants argue that Vasquez has failed to state his Constitutional and Rehabilitation Act claims.  See Motion at 9-16.  The Defendants begin by addressing Vasquez' claims arising out of the assault he suffered at Guadalupe Correctional.  See Motion at 9-13.  The Defendants contend that Vasquez does not "plausibly plead facts stating a claim that Angel Sanchez and Andres Sanchez violated his Eighth and Fourteenth Amendment rights," because Vasquez' allegation that "Defendants Angel and Andres Sanchez 'informed other prisoners in housing Unit 1-E Pod . . . that Plaintiff was a rat,'" is conclusory and speculative.  Motion at 9 (quoting FAC ¶ 19, at 7).  The Defendants explain that Vasquez does not "identify[ ]any facts supporting this allegation."  Motion at 9.  Rather, the

Defendants aver, Vasquez "makes it clear that he is only surmising that such a statement occurred by pleading that it 'is at a minimum suspect timing' that he was processed by the Sanchez brothers and shortly thereafter stabbed."  Motion at 9 (quoting FAC ¶ 48, at 7).  Likewise, the Defendants argue that Vasquez' argument and that Angel Sanchez and Andres Sanchez "ignored the panic button" when Vasquez was attacked is "conclusory and lacks any factual support."  Motion at 11.

The Defendants next argue that the Tafoya-Lucero, Marquez, and Fajardo or Hagerman ("Supervisory Defendants") "are entitled to qualified immunity for the alleged inmate assault." Motion at 11.  To establish that a prison official violated an inmate's Eighth Amendment rights, the Defendants provide, "'an inmate must show (1) that the conditions of his incarceration present an objectively substantial risk of serious harm and (2) prison officials had subjective knowledge of the risk of harm . . . .'"  Motion at 12 (quoting <u>Requena v. Roberts</u>, 893 F.3d 1195, 1214 (10th Cir. 2018)).  Here, the Defendants contend, Vasquez has not "provided any evidence or factual bases to show that he was objectively at risk of serious harm" nor "made any allegations that the Defendants had <u>subjective knowledge</u> of those risks."  Motion at 12 (emphasis in Motion). Moreover, the Defendants aver, "none of the [Supervisory Defendants] are subject to liability on a theory of <u>respondeat superior</u>."  Motion at 12 (citing <u>Dodds v. Richardson</u>, 614 F.3d 1185, 1197 (10th Cir. 2010), for the proposition that government officials cannot be held liable under a theory of respondeat superior under § 1983)(emphasis in Motion).  The Defendants' final argument addressing Vasquez' assault-related claims is that the Corrections Department and the Supervisory Defendants in their official capacity are entitled to immunity under Eleventh Amendment to the Constitution of the United States the extent that Vasquez seeks relief under § 1983.  <u>See</u> Motion at 12-13 (citing <u>Lee v. Univ. of New Mexico</u>, 449 F. Supp. 3d 1071, 1138 (D.N.M. 2020)(Browning, J.)).

The Defendants proceed to address Vasquez' "claims premised on the grievance system," which the Defendants explain Vasquez alleges under both the Eighth Amendment and the Rehabilitation Act. Motion at 13. The Defendants argue that Vasquez has not pled facts sufficient to establish, generally, that "he was denied a fair grievance process." Motion at 13. Specifically, the Defendants provide that Vasquez' grievance-related claims are inadequate under rule 12(b)(6), because Vasquez "has failed to allege a harm specific to him in the grievance process by any Defendant or proposed Defendant beyond his conclusory allegations that his rights were violated . . . ." Motion at 14. Moreover, the Defendants contend that Vasquez' allegations "that the Defendants variously engaged in behavior that created an unfair or inadequate grievance process," are too conclusory to state a claim upon which relief can be granted. Motion at 14.

Even if Vasquez "made well-pled allegations of harm to him in the grievance process," the Defendants argue, "his Eighth Amendment claim would fail as a matter of law." Motion at 15. First, the Defendants aver that "it is well established that 'a failure to adhere to administrative regulations does not equate to a constitutional violation.'" Motion at 15 (quoting Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993)). The Defendants explain that this case is similar to a case in which the Honorable Judith Herrera, United States District Judge for the United States District Court for the District of New Mexico, dismissed an inmate's Due Process claims that the Corrections Department had not properly investigated and addressed his prison claims. See Motion at 16 (citing Gonzales v. New Mexico Corr. Dep't, No. CIV 18-0107, 2020 WL 6316344, at *6 (D.N.M. October 28, 2020)(Herrera, J.)). Moreover, the Defendants contend, "to the extent that Plaintiff is relying on supervisory liability to establish claims against the individual defendants, such claims are not allowed by law." Motion at 16-17. At bottom, the Defendants state: Vasquez "can point to no case law establishing his creative and novel claim that the

administration of the grievance process violated a right protected by the Eighth Amendment."
Motion at 17.

Second, the Defendants argue that the Rehabilitation Act is not a proper avenue for Vasquez' claims regardless whether the Defendants are sued in their individual or official capacities.  See Motion at 18.  The Defendants state: "The Rehabilitation Act does not allow claims against individual defendants in their individual capacities."  Motion at 18 (citing Moore v. Cooksey, 242 F.3d 389 (10th Cir. 2000)).  "To the extent he brings a Rehabilitation Act claim against the individual defendants in their official capacity," the Defendants thus provide, "his claim would only lie against the NMCD," because "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent' and are 'treated as a suit against the entity.'"  Motion at 18 (quoting Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)).  Nonetheless, the Defendants contend, Vasquez has failed to state a prima facie claim under the Rehabilitation Act, which the Defendants explain requires "'that (1) plaintiff is handicapped under the Act; (2) [he] is otherwise qualified to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff' based upon a disability."  Motion at 18-19 (quoting Havens v. Colo. Dep't of Corr., 897 F.3d 1250, 1262 (10th Cir. 2018))(alteration in Havens v. Colo. Dep't of Corr.).  The Defendants argue that Vasquez' Rehabilitation Act claim fails, because "[h]e has only made conclusory allegations that his grievance was denied or that it was subject to any irregularity in the grievance process," he "has not pled facts from which he could demonstrate that, if there was an irregularity and if it impacted him, it was based on discrimination based on his disability," and, "[f]inally, the facts he alleges do not show that, if there was discrimination, it was intentional," which the Defendants provide must be demonstrated in order to obtain damages under the Rehabilitation Act.  Motion at

19.   For these reasons, the Defendants "request that the Court dismiss Plaintiff's Amended Complaint under Rule 12(b)(6)."  Motion at 19

    2.    **Vasquez' Response.**

    Vasquez responds to the Motion and argues that he has stated sufficiently his claims under rule 12(b)(6).  See Response to Defendant's Motion to Dismiss Amended Complaint for Violation of Constiutional [sic] Rights and Request for Declaratory and Injunctive Relief as it Pertains to the Fourtheenth [sic] and Eighth Amendment Violations and Discrimination Under the Americans with Disabilities Act and for Qualified Immunity at 1-2, filed October 18, 2022 (Doc. 20)("Response").  Vasquez begins by providing additional factual context which did not appear in the FAC regarding his claims against Angel Sanchez and Andres Sanchez, including that "[t]he Sanchez brothers . . . were in charge as masters of the control unit which monitors emergency calls from the Pods."  Response at 2-3.   Although Vasquez "concedes that no one in Unit 1-E Pod after he was placed there by the Sanchez brothers informed him that the Sanchez brothers had informed them that he was a 'rat,'" he states that Angel Sanchez and Andres Sanchez had previously informed other inmates that he was a rat while he was at PNM.  Response at 3. Vasquez levels a legal argument, citing to a United States Court of Appeals for the Seventh Circuit case for the proposition that the disputes in this case can only be resolved by a trier-of-fact and it would therefore be improper to dismiss his claims pursuant to rule 12(b)(6).  See Response at 4 (citing Santiago v. Lane, 894 F.2d 218, 224 (7th Cir. 1990)).

    Vasquez next asserts a retaliation claim under the First Amendment of the Constitution of the United States.  See Response at 5-6.  Specifically, Vasquez argues that he has met his burden to demonstrate that Angel Sanchez and Andres Sanchez violated his clearly established First Amendment rights, because he

> (1) was engaged in Constitutionally protected activity when he filed grievances against the Sanchez brothers, and then subsequently his civil law suits against them (2) the Sanchez brothers actions [sic] caused Plaintiff to suffer a physical and psychological injury that would chill a person of ordinary firmness from continuing to engage in filing grievances or civil rights law suits (3) the Defendant Sanchez brothers adverse action [sic] against Plaintiff was substantially motivated as a response to Plaintiff's exercise of his Constitutionally protected conduct, i.e., that because of the grievances and the law suit that Plaintiff filed against the Sanchez brothers they used other inmates to stab and beat the Plaintiff.

Response at 5-6. Turning to his Eighth Amendment claim, Vasquez disputes that his "case hinges on his claim that Sanchez brothers informed other prisoners in housing Unit 1-E Pod that Plaintiff was a 'rat'"; rather, Vasquez avers, the case hinges on the fact that he "met with" Angel Sanchez and Andres Sanchez "two years before," and filed grievances against them, which led to Angel Sanchez and Andres Sanchez "retaliat[ing] against him because of his First Amendment protected activity." Response at 7. Accordingly, Vasquez states that he "has provided sufficient circumstantial evidence to infer a valid claim and to allow the complaint to go to a jury." Response at 7.

In response to the Defendants' argument that he cannot state a claim against the Supervisory Defendants, Vasquez first provides that "the law as it pertains to prison officials protecting inmates from other inmates" affirms that "a prison official will be liable for failing to protect an inmate from attacks if that official acts with 'deliberate indifference.'" Motion at 7 (quoting Richardson v. Penfold, 839 F.2d 392, 394 (7th Cir. 1988)). Vasquez asserts that

> The NMCD and the prison officials at the minimum acted with recklessness and deliberate indifference by allowing the Sanchez brothers who had a lawsuit pending against them by Plaintiff, to process the Plaintiff when he came into Santa Rosa from PNM, and then by allowing them to escort him to a violent gang pod after Plaintiff had informed them that he had had trouble with other inmates that resulted in him getting stabbed in the Clayton prison.

Response at 8. Vasquez avers that Tafoya-Lucero and Marquez "had a list" of his enemies, and

knew that they were housed in the Guadalupe Correctional unit that Angel Sanchez and Andres Sanchez placed Vasquez in, "but never took any affirmative action" to ensure Vasquez was not placed in that unit.  Response at 8.  See id. at 9 ("When Plaintiff arrived at the prison GCCF he never underwent an orientation program of one hour, much less one day designed to determine his security needs.").

Vasquez next responds to the Defendants' representation that the Supervisory Defendants are entitled to qualified immunity in relation to his grievance-system claims.  See Response at 10-17.  Vasquez first clarifies that he "has not alleged that the grievance system violates the Fourteenth Amendment, but maintains that . . . the grievance policy at issue which did not allow him to proceed further then by denying his grievance . . . preclude[ed] his right to bring a valid Eighth Amendment claim."  Response at 11-12.  Vasquez references three additional pending cases he has brought against the Defendants in the United States District Court for the District of New Mexico and alleges that they are "all included herein by reference as if the allegations had been made herein . . . ."  Response at 11.  Vasquez reiterates that he has a mental disability and that "he has never been offered assistance with filing a grievance" and "his grievances are always dismissed and never maintained."  Response at 12.  Vasquez maintains that to allow inmates to file grievances but then dismiss them "for being untimely filed, or for some other reason is in and of itself a violation of the Eighth Amendment."  Response at 12-13.  Vasquez asserts that "[t]he Defendants admit that its prison officials have in place a grievance system that dismisses valid grievance [sic]" and, while Vasquez concedes that "[t]he denial of grievances by themselves without connection to the violation of a Constitutional right alleged by Plaintiff, does not establish personal participation under § 1983," he argues that he "has made the connection needed by the attached exhibits to the other complaints noted above along with his allegations, and clearly by the claims he has made in

the complaint at issue." Response at 13-14. Vasquez contends that he has "named the official policy and custom, i.e., the grievance system," as required to bring his claim. Response at 14-15.

Vasquez acknowledges, as the Defendants argue, that "[t]o state a claim under § 1983 a Plaintiffs [sic] complaint must make clear exactly who is alleged to have done what to whom," and avers that he "has alleged specific harm to him by the grievance process by prison officials . . . ." Response at 15. For example, Vasquez provides that he has alleged that Fajardo and Hagerman, "received a grievance against Grievance Officer Daniel Sedillo regarding his inappropriate denial of the grievance in this case because Daniel Sedillo took negative action on the grievance action on the grievance [sic] that he had not [sic] authority to take . . . ." Response at 15. In relation to these allegations, Vasquez reasserts his First Amendment claim, namely that he engaged in protected activity by filing the grievance against Sedillo and that "Sedillo purposely manipulated his grievance on this cause which he ultimately wrongfully denied." Response at 15-16. Moreover, Vasquez contends that his FAC's allegations sufficiently state an Eighth Amendment violation, because "he was not able to receive proper legal redress against the Sanchez brothers or prison officials for the violation of his Eighth Amendment rights by the Sanchez brothers and other prison officials." Response at 16. Specifically, Vasquez states:

> Here Daniel Sedillo dismissing the grievance he filed regarding the attack in Santa Rosa, and that dismissal being rubber stamped by the other prison officials of Plaintiffs valid Eighth Amendment violation of cruel and unusual punishment at the hands of the Sanchez brothers, Warden Marquez and Secretary of Corrections Alisha Tafoya-Lucero; and including that Daniel Sedillo lied about the grievance not properly filed on a timely basis, and improperly not forwarding the grievance to the grievance officer at the Santa Rosa facility, and that he failed to investigate his grievance and that he provided false and misleading information on Plaintiffs grievance to other prison officials resulted in having Plaintiffs rights to a proper remedy against the Defendants denied.

Response at 16-17 (citing Bridges v. Gilbert, 557 F.3d 541 (7th Cir. 2009); Kaba v. Stepp, 458

F.3d 678 (7th Cir. 2006)).  Vasquez concludes that "[t]he grievance system within the NMCD is deliberately indifferent to Plaintiffs serious illness' [sic] and injuries and constitute cruel and unusual punishment contravening the Eighth Amendment as it applies to the Grievance Process." Response at 17.

In response to the Defendants' request that the Court dismiss his Rehabilitation Act claim, Vasquez argues that he has alleged a prima facie case because his case

> has been brought against the NMCD, and Plaintiff has set out facts indicating that
> (1) he is handicapped under the Act; (2) [he] is "otherwise qualified" to participate
> in the program i.e., to participate in filing grievances for the violation of his Eighth
> Amendment rights; (3) the NMCD receives federal financial assistance; and (4) the
> program discriminates against the Plaintiff, based on his disability.

Response at 18 (quoting Havens v. Colo. Dep't of Corr., 897 F.3d 1250, 1262 (10th Cir. 2018)). Finally, Vasquez requests "that the Court allow him to Amend his Complaint once again to correct any deficiencies that this court might find and so he can add additional causes of actions [sic] that have come to his attention since he filed his law suit [sic]."  Response at 18.

### 3. The Defendants' Reply.

The Defendants reply to the Response, arguing that the Response "ultimately fails to address Defendants' Motion to Dismiss, and the Court should accordingly grant the Motion to Dismiss."  Defendants' Reply in Support of Defendants' Motion to Dismiss Amended Complaint for Violation of Constitutional Rights and Request for Declaratory and Injunctive Relief as it Pertains to the Fourteenth and Eighth Amendment Violations and Discrimination Under the Americans with Disabilities Act and for Qualified Immunity at 2, filed November 1, 2022 (Doc. 24)("Reply").  As an initial matter, the Defendants contend that Vasquez fails to respond to the Defendants' "central argument" that Vasquez' complaint "relies upon conclusory allegations that cannot be the bases for a valid claim."  Reply at 2 (citing Ashcroft v. Iqbal, 556 U.S. 662, 679-

81 (2009)).  "Instead," the Defendants supply, Vasquez "reiterates his conclusory allegations and then summarily cites to filings in other cases that he has initiated in an attempt to make his allegations appear less conclusory."  Reply at 2.  The Defendants next note that, despite his promise to do so in his Response, Vasquez has not yet served "the three parties added to his Amended Complaint."  Reply at 3.

Turning to Vasquez' merits arguments, the Defendants explain that despite Vasquez' discussion "whether the Sanchez Brothers are entitled to qualified immunity," Vasquez does not address the Defendants' argument regarding the "conclusory nature of the allegations" against Angel Sanchez and Andres Sanchez.  Reply at 3-4.  The Defendants explain that Vasquez' reliance on Santiago v. Lane, 894 F.2d 218, "is flawed," because the case is a "Seventh Circuit opinion that predates the Iqbal pleading requirements," and is, accordingly, "of limited persuasive value at best."  Reply at 4-5.  See id. at 5 (identifying the differences between Santiago v. Lane and Vasquez' factual allegations).  Moreover, the Defendants argue, Vasquez' contention that his claim against Angel Sanchez and Andres Sanchez hinge on the fact that he filed grievances and a lawsuit against Angel Sanchez and Andres Sanchez two years previously, "requires the Court to take as true that the Sanchez Brothers conspired against Plaintiff for two years to have other inmates attack him," without any factual context.  Reply at 5.

The Defendants next aver that Vasquez has not stated a claim against Tafoya-Lucero or Marquez for failing to protect him from Angel Sanchez and Andres Sanchez' retaliation, because Vasquez relies only "on an assertion that these Defendants acted recklessly."  Reply at 6.  The Defendants explain that Vasquez' "contention that he can establish deliberate indifference using tort recklessness standards has no support in this jurisdiction or in the jurisdiction that he relied on," and that, moreover, Vasquez has provided no well-pled allegations that Tafoya-Lucero and

Marquez

> had subject knowledge [sic] that the Sanchez Brothers were actively conspiring against an inmate that was being transferred to GCCF, that they knew what unit the Sanchez Brothers would assign the Plaintiff, and that there were inmates in that unit that either already were planning to attack the Plaintiff or that those inmates were operating under the direction of the Sanchez Brothers.

Reply at 6-7.

Proceeding to Vasquez' "argument regarding the Grievance System," the Defendants contend that "the Eighth Amendment offers no relief to Plaintiff's claims regarding the grievance system" and that Vasquez fails to "address the lack of well pled allegations" as to his Rehabilitation Act claim. Reply at 7-8. The Defendants maintain that Vasquez cannot "provide any support that a grievance system itself can violate the Eighth Amendment," and thus "it cannot be said that there is clearly established law that can overcome Defendants' qualified immunity." Reply at 7. Moreover, the Defendants provide, even if Vasquez' "theory of a grievance system violating the Eighth Amendment was supported by law," Vasquez "does not allege facts that the grievance system and Defendants' administration of it amount to a violation of the Eighth Amendment." Reply at 8. As to Vasquez' Rehabilitation Act claim, the Defendants argue that Vasquez has not alleged any facts that "he has been intentionally discriminated against because of his intellectual disability." Reply at 8. In sum, the Defendants reiterate that the Court should dismiss Vasquez' claims, "because he has failed to allege claims that the Court can grant relief upon." Reply at 8.

### 4.      The Hearing.

The Court held a hearing on the Motion on March 22, 2023. See Clerk's Minutes at 1, filed March 22, 2023 (Doc. 40). In response to the Court's request to describe the procedural history of the case, the Defendants began by explaining that Vasquez' claims stem from the 2022 attack he suffered at Guadalupe Correctional and not the 2020 incident referenced in the FAC. See

Draft Transcript of Hearing at 2:20-3:2, taken March 22, 2023 ("Tr.")(Van Meter).[4]  Vasquez

responded that, while the 2020 incident -- in which he was "beaten up by two corrections officers"

-- was separate from the 2022 attack, the prior incident "feeds into this case," because the same

corrections officers were involved in both incidents.  Tr. at 4:21-6:2 (Ayala).  The Defendants

explained that Vasquez has five pending cases in the District of New Mexico regarding different

incidents that have taken place during his incarceration, but that Vasquez' claim relating to the

grievance policy appears in each of the cases.  See Tr. at 3:4-4:15 (Van Meter).

 Proceeding to his claims' merits, Vasquez averred that the Defendants "have not been able

to produce a single case indicating that an Eighth Amendment violation does not apply to a

grievance policy when it prevents an inmate from raising a valid Eighth Amendment right."  Tr.

at 8:1-5 (Ayala).  In response to the Court's query how Vasquez would "survive the clearly

established prong" if no party could identify case law whether "there is an Eighth Amendment

claim for a grievance process," Vasquez explained that "[i]t's not that there is an Eighth

Amendment violation because of the grievance process.  But the grievance process itself is barring

the plaintiff[] from being able to grieve Eighth Amendment violations."  Tr. at 8:14-9:13 (Court,

Ayala).  Vasquez argued that that the issue whether he could bring an Eighth Amendment claim

had not been decided by an order issued by the Honorable Robert C. Brack, United States District

Judge for the United States District Court for the District of New Mexico, in Vasquez v. Tafoya-

Lucero, No. CIV 20-0612, another pending case that Vasquez has filed regarding similar issues.

9:18-12:18 (Court, Ayala).

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

The Defendants, arguing in favor of the Motion, contended that Vasquez' Eighth Amendment claim "that the denial of a grievance for violating the Eighth Amendment is itself a violation of the Eighth Amendment" is not valid, and explained that Judge Brack's decision in Vasquez v. Tafoya-Lucero, No. CIV 20-0612, addressed an "identical" claim and demonstrates that Vasquez cannot state an Eighth Amendment claim. Tr. at 13:3-16:4 (Van Meter). Turning to Vasquez' claims against Angel Sanchez and Andres Sanchez, the Defendants represented that Vasquez concedes that "he does not know of any actual statement by the Sanchez brothers" and that "nobody told him [that] the Sanchez brothers . . . called him a rat or encouraged other inmates to jump him." Tr. at 29:25-30:13 (Van Meter). Moreover, the Defendants maintained, Vasquez provided facts in his Response about the dangerousness of the Guadalupe Correctional pod in which Angel Sanchez and Andres Sanchez placed him that did not appear in the FAC. Tr. at 30:14-31:17 (Van Meter). The Defendants stated that the Supervisory Defendants cannot be expected to know of every inmate that posed a danger to plaintiff," and therefore it is "not plausible that they had any deliberate indifference toward the plaintiff." Tr. at 31:20-33:9 (Van Meter). The Defendants contended that "without some evidence that a specific inmate was in this particular pod; that the defendants knew that inmate was there and knew that that inmate presented a danger to plaintiff," Vasquez' allegations did not meet "the requirements of the Tenth Circuit's case law for showing deliberate indifference." Tr. at 40:10-22 (Van Meter). As to Vasquez' claim under the Rehabilitation Act, which the Defendants reiterated can only be brought against the Corrections Department, the Defendants argued that Vasquez "has not pled allegations which show that by following their grievance policy, they would have clearly been violating plaintiff's rights as a person with a disability." Tr. at 33:10-35:6 (Van Meter). The Defendants clarified that they "are disputing that there was any discrimination, and that any discrimination was intentional." Tr. at

52:16-18 (Van Meter).

After clarifying that there was no pending motion to amend the complaint and that the FAC is the "operative complaint," Tr. at 16:20-18:2 (Court, Ayala, Van Meter), Vasquez addressed his Eighth Amendment grievance claim, Tr. at 19:12-26:15 (Ayala). Vasquez reiterated that, because "all grievances are denied," the Defendants are "fail[ing] to protect inmates from a known harm," which "constitutes a constitutional violation," and contended that he has "provided the affirmative link between the grievance system, or lack of it, and the violation of his constitutional rights by prison officials." Tr. at 19:16-21:12 (Ayala). Vasquez explained further that, although he has a mental disability, "he was never offered assistance with filing grievances, although the Corrections Department is required by its own policy to have a special monitor at every facility to assist individuals like the plaintiff with the process." Tr. at 24:5-9 (Ayala). Regarding his claims related to the assault he suffered at Guadalupe Correctional, Vasquez argued that he informed Angel Sanchez and Andres Sanchez about "his concerns" related to a previous stabbing that he had suffered, that the statements Angel Sanchez and Andres Sanchez made to him sounded "like a threat," and that he was "stabbed less than an hour later." Tr. at 43:15-22 (Ayala). See id. at 56:10-57:11 (Ayala). Vasquez contended that he has alleged a prima facie case under the Rehabilitation Act, because it was undisputed that he suffers from a mental disability and he has set forth facts sufficient to demonstrate the other necessary factors, included that "the program discriminates against the plaintiff based on his disability." Tr. at 47:11-49:22 (Ayala).

Vasquez argued that he had alleged "facts supporting a violation of his First Amendment right of freedom of speech." Tr. at 57:12-58:15 (Ayala). The Defendants responded, however, that Vasquez had not alleged a First Amendment claim in the FAC and that the Court should not allow Vasquez to amend the FAC. See Tr. at 58:24-59:24 (Van Meter); id. at 38:10-13 (Van

Meter).  The Court informed the parties that it is "not inclined to allow the Eighth Amendment grievance claim to go forward."  Tr. at 29:10-17 (Court).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The Complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the nonmoving party, and draw all reasonable inferences in the non-moving party's favor.  See Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

See Ashcroft v. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557). See Crane v. Utah Dep't of Corr., 15 F.4th 1296, 1303 (10th Cir. 2021)("Courts do not assume as true allegations that are legal conclusions, formulaic recitations of elements, or naked assertions devoid of further factual enhancement."). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555.

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl.

Corp. v. Twombly, 550 U.S. at 570).  See Gallegos v. Bernalillo Cnty. Board of Cnty. Comm'rs,
278 F. Supp. 3d 1245, 1259 (D.N.M. 2017)(Browning, J.).

      "When a party presents matters outside of the pleadings for consideration, as a general rule
'the court must either exclude the material or treat the motion as one for summary judgment.'"
Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir.
2017)(quoting Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004)).  There are three
limited exceptions to this general principle: (i) documents that the complaint incorporates by
reference, see Tellabs, Inc. v. Makor Issues & Rts, Ltd., 551 U.S. at 322; (ii) "documents referred
to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute
the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002);
and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rts,
Ltd., 551 U.S. at 322.  See Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d at 1103
(holding that the district court did not err by reviewing a seminar recording and a TV episode on
a rule 12(b)(6) motion, which were "attached to or referenced in the amended complaint," central
to the plaintiff's claim, and "undisputed as to their accuracy and authenticity").  "[T]he court is
permitted to take judicial notice of its own files and records, as well as facts which are a matter of
public record."  Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on
other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).

## LAW REGARDING THE EIGHTH AMENDMENT

      When a prisoner is incarcerated after being indicted, the Eighth Amendment protects him
from "a prison official's 'deliberate indifference' to a substantial risk of serious harm."  Farmer v.
Brennan, 511 U.S. 825, 828 (1994).  An incarcerated person bringing an Eighth Amendment claim
to challenge prison conditions must satisfy a two-pronged test with objective and subjective

components.  See Farmer v. Brennan, 511 U.S. at 834.  Sawyers v. Norton, 962 F.3d 1270, 1272-73 (10th Cir. 2020)("'The deliberate indifference standard has objective and subjective components.'" (quoting Burke v. Regalado, 935 F.3d 960, 991 (10th Cir. 2019))).  First, the plaintiff must demonstrate that the official caused an injury that, objectively, is "sufficiently serious," Farmer v. Brennan, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)), because it deprives the plaintiff of "the minimal civilized measure of life's necessities," Farmer v. Brennan, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  To establish the first prong of the test, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."  Helling v. McKinney, 509 U.S. 25, 36 (1993).  Those conditions that "pose an unreasonable risk of serious damage to a [person's] future health" may violate the Eighth Amendment even if the damage has not yet occurred and may not affect every incarcerated person exposed to the conditions. Farmer v. Brennen, 511 U.S. at 836.

Second, the official, subjectively, must have a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)). This second prong represents the functional application of the deliberate indifference standard.  See Smith v. Cummings, 445 F.3d 1254, 1258 (10th Cir. 2006).  In other words, the plaintiff must prove that the defendant knew of the risk posed by the challenged condition and disregarded that knowledge by failing to take reasonable measures to abate the risk.  See Martinez v. Beggs, 563 F.3d 1082, 1088-89 (10th Cir. 2009).  That a risk is obvious is circumstantial evidence that permits the conclusion that a prison official knew of the risk, even absent direct evidence about what the official knew.  See Farmer v. Brennan, 511 U.S. at 842-43.  The Supreme Court has stated: "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference

with recklessness." Farmer v. Brennan, 511 U.S. at 836.

**LAW REGARDING THE REHABILITATION ACT**

Section 504 of the Rehabilitation Act provides "that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." Alexander v. Choate, 469 U.S. 287, 301 (1985). "To establish a prima facie claim under § 504, a plaintiff must demonstrate that '(1) plaintiff is handicapped under the Act; (2) [he or she] is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff'" based upon a disability. Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009)(quoting Hollonbeck v. U.S. Olympic Comm., 513 F.3d 1191, 1194 (10th Cir. 2008)). "The Supreme Court has recognized that § 504 is intended to ensure that 'an otherwise qualified handicapped individual [is] provided with meaningful access to the benefit that the grantee offers . . . . [T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.'" Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d at 1229 (quoting Alexander v. Choate, 469 U.S. 287, 301 (1985))(alterations in Alexander v. Choate).

Nonetheless, while "'Section 504 seeks to assure evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance'" it does not "'guarantee the handicapped equal results' from participation in such programs and services." Havens v. Colorado Dep't of Corr., 897 F.3d 1250, 1263 (10th Cir. 2018)(quoting Alexander v. Choate, 469 U.S. at 304). "The plaintiff bears the burden of establishing that the defendant 'discriminated against the handicapped' in the offered program or service by failing to provide meaningful access to the program and service, "such that the need for a remedial interactive process aimed at finding a reasonable accommodation was triggered."

- 25 -

Havens v. Colorado Dep't of Corr., 897 F.3d at 1263 (quoting Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d at 1233 (Gorsuch, J., concurring)).  In order to recover damages under the § 504, "a plaintiff must establish that the agency's discrimination was intentional," Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d at 1228, and "[d]eliberate indifference is sufficient to satisfy the intentional-discrimination requirement for compensatory damages under § 504," Havens v. Colorado Dep't of Corr., 897 F.3d at 1264.  "In construing the scope of liability under § 504 of the Rehabilitation Act, courts may also reference cases decided under Title II of the ADA."  Havens v. Colorado Dep't of Corr., 897 F.3d at 1263.

## LAW REGARDING § 1983 LIABILITY

Section 1983 creates a cause of action for a plaintiff to seek money damages from state officials who have violated his or her constitutional or statutory rights.  See 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."   West v. Atkins, 487 U.S. 42, 48 (1988).  Individual, non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012).  The Supreme Court has stated that there is no respondeat superior liability under § 1983.  See Ashcroft v. Iqbal, 556 U.S. at 675 ("Because vicarious liability is inapplicable to

Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971)("Bivens")[5]] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). "An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor." Garcia v. Casuas, No. CIV 11-0011, 2011 WL 7444745, at *25 (D.N.M. December 8, 2011)(Browning, J.)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for the employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability. See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012); Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006). The Tenth Circuit also recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations. See Garcia v. Casuas, 2011 WL 7444745, at *25-26 (citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)). The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official

---

[5]In Bivens, the Supreme Court held that a violation of the Fourth Amendment of the Constitution "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." 403 U.S. at 389.

defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. The Tenth Circuit in Dodds v. Richardson stated:

> Whatever else can be said about *Iqbal*, and certainly much can be said, we conclude the following basis of § 1983 liability survived in this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

614 F.3d at 1199 (quoting 42 U.S.C. § 1983). The Tenth Circuit has noted, however, that "*Iqbal* may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200. It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200. More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'" Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

## LAW REGARDING QUALIFIED IMMUNITY

Under the doctrine of qualified immunity, government officials performing "discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When a defendant asserts qualified immunity, therefore, the plaintiff must demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct. See Est. of Smart by Smart v. City of Wichita, 951 F.3d 1161, 1178 (10th

Cir. 2020).  A right is clearly established when it is "sufficiently clear that every reasonable official employee would have understood that what he is doing violates that right."  Reichle v. Howards, 566 U.S. 658, 664 (2012).

In the Tenth Circuit, until recently, this rule meant that a right is clearly established only when there is a factually similar "Supreme Court or Tenth Circuit decision on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains."  Truman v. Orem City, 1 F. 4th 1227, 1235 (10th Cir. 2021)(quoting Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014)).  The Supreme Court of the United States, however, recently suggested that a plaintiff need not, in every situation, point to a case that is sufficiently factually similar.  See Taylor v. Riojas, 141 S. Ct. 52, 54 (2020)("Taylor")("[N]o reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house [the plaintiff] in such deplorably unsanitary conditions for such an extended period of time.").  The Tenth Circuit has understood Taylor to clarify that it is no longer the case that an almost-identical case must exist for a constitutional violation to be clearly established.  See Truman v. Orem City, 1 F. 4th at 1241 ("Just like any reasonable corrections officer should have understood the inmate in Taylor's conditions of confinement offended the Constitution, so too should any reasonable prosecutor understand that providing a medical examiner fabricated evidence and then putting him on the stand to testify based on that false information offends the Constitution.").  The Court proceeds with both lines of analysis:

> An officer therefore is entitled to qualified immunity unless a plaintiff can demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established either (a) by a factually similar Supreme Court or Tenth Circuit case on point, see Thomas v. Kaven, 765 F.3d  at 1194, or, in rare cases, by "general constitutional principles,"

Routt v. Howry, 835 F. App'x. at 382 -- at the time of the alleged misconduct, or (b) because the conduct was "particularly egregious" such that "any reasonable officer should have realized" it was unlawful, Taylor, 141 S. Ct. at 54.

Caldwell v. Univ. of N.M. Bd. of Regents, No. CIV 20-0003, 2023 WL 4236016, at *36 (D.N.M. June 28, 2023)(Browning, J.).

To evaluate a motion to dismiss on the grounds of qualified immunity, "a court must consider 'whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" Leverington v. City of Colo. Springs, 643 F.3d 719, 732 (10th Cir. 2011)(quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). The Tenth Circuit "uses the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally." Shero v. City of Grove, 510 F.3d 1196, 1200 (10th Cir. 2007). Because qualified immunity "is an immunity from suit rather than a mere defense to liability," Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1150 (10th Cir. 2006), "the claim is dismissed" where the "plaintiff's allegations, if true" cannot "establish a constitutional violation," Shero v. City of Grove, 510 F.3d at 1204.

## LAW REGARDING ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has construed Eleventh Amendment immunity to prohibit federal courts from entertaining suits against non-consenting States that their own citizens or citizens of another State bring. See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). State agencies and State officials likewise enjoy immunity as "an arm of the state." Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 280-81 (1977). Under the Eleventh Amendment,

"claims against the state pursuant to § 1983 in the federal courts are barred as a matter of law." ETP Rio Rancho Park, LLC v. Grisham, 522 F. Supp. 3d 966, 1005-06 (D.N.M. 2021)(Browning, J.).  See Quern v. Jordan, 440 U.S. 332, 340 (1979).  The doctrine that the Supreme Court announced in Ex Parte Young, 209 U.S. 123, 128 (1908), however, allows certain suits seeking prospective relief from violations of federal law to proceed against state officials.  See ETP Rio Rancho Park, LLC v. Grisham, 522 F. Supp. 3d at 1006 (citing Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior, 160 F.3d 602, 607-08 (10th Cir. 1998)).

## ANALYSIS

The Court dismisses Vasquez' FAC, pursuant to rule 12(b)(6), for failure to state a claim upon which relief can be granted.  The Court first considers Vasquez' claim pertaining to the assault he suffered at Guadalupe Correctional and concludes that Vasquez has not alleged sufficient facts to state a plausible claim that any Defendant violated his Eighth Amendment rights.  Accordingly, the individually named Defendants in their individual capacity are entitled to qualified immunity as to Vasquez' assault-related Eighth Amendment claim.  In addition, the Court concludes that the Corrections Department and the individually named Defendants in their official capacity are entitled to immunity under the Eleventh Amendment.  The Court turns next to Vasquez' claims related to the grievance process, and concludes that the FAC does not state: (i) an Eighth Amendment claim against any Defendant, because there is no legal basis on which the Court could grant Vasquez' requested relief; and (ii) a claim under § 504 of the Rehabilitation Act, because Vasquez alleges no facts that he suffered discrimination because of his disability.  Accordingly, the Court grants the Motion.

I.    **VASQUEZ DOES NOT STATE AN EIGHTH AMENDMENT CLAIM AGAINST
      ANY DEFENDANT IN RELATION TO THE ATTACK HE SUFFERED.**

Vasquez's FAC brings Eighth Amendment claims against Angel Sanchez, Andres Sanchez, Marquez, and Tafoya-Lucero, in relation to the assault that he suffered.  FAC ¶¶ 56-57, at 35-36.  As the Court describes in detail below, Vasquez pleads insufficient facts that Angel Sanchez and Andres Sanchez' encouraged other inmates to assault him in retaliation for the lawsuit and grievances he filed against them and that Angel Sanchez and Andres Sanchez' purposefully failed to come to Vasquez' aid after the assault.  In addition, Vasquez does not allege sufficient facts that the Supervisory Defendants knew of and exhibited deliberate indifference towards Angel Sanchez and Andres Sanchez' alleged actions.  The Court concludes, therefore, that dismissal of Vasquez' assault-related claims is appropriate.

A.    **VASQUEZ DOES NOT STATE AN EIGHTH AMENDMENT CLAIM
       AGAINST ANGEL SANCHEZ AND ANDRES SANCHEZ.**

Vasquez alleges that Angel Sanchez and Andres Sanchez violated his Eighth Amendment rights by failing to protect him from the assault he suffered at Guadalupe Correctional.  See FAC ¶ 57, at 35.  The FAC alleges that, on August 4, 2020, Angel Sanchez sprayed Vasquez and a different corrections officer who was holding Vasquez down with mace, and that Andres Sanchez witnessed this incident.  See FAC ¶¶ 15-16, at 5-6.  Vasquez alleges, however, that neither Angel Sanchez nor Andres Sanchez "reported the excessive use of force as required by department policy," and that Andres Sanchez "lied" in his report on the incident, and later admitted that he "slammed his hand against a window and broke it because he had so much adrenaline" after the incident.  FAC ¶¶ 15-16, at 5-6.  Following this "misconduct," Vasquez alleges that he filed grievances against the corrections officer who beat him and against Andres Sanchez and Angel Sanchez "and then filed a federal law suit [sic] which is pending in federal court."  FAC ¶ 17, at

6. Vasquez alleges that "one of the Sanchez brothers" filed a meritless disciplinary report against him casting Vasquez as the aggressor in the attack, despite that no weapon was found in Vasquez' possession. See FAC ¶ 37, at 12-13.

Two years later, "[o]n or about June 24, 2022," the FAC alleges that Vasquez was transferred from PNM to Guadalupe Correctional, "and when he arrived he was met by brother STIU Sgt Angel Sanchez, Andres Sanchez and an other [sic] individual." FAC ¶ 14, at 5. Vasquez alleges "[u]pon opinion and belief" that "upon seeing Plaintiff at GCCF or prior to Plaintiff's arrival at GCCF the Sanchez brothers informed other prisoners in Unit 1-E Pod at GCCF in Santa Rosa that Plaintiff was a 'rat,'" FAC ¶ 19, at 7, and then "purposefully put" Vasquez in the Unit 1-E Pod "in retaliation for the law suit [sic] that Plaintiff had filed against them," FAC ¶ 20, at 7. In support of this allegation, Vasquez alleges that Angel Sanchez and Andres Sanchez "questioned Plaintiff about the pending lawsuit in the federal court against them and informed Plaintiff that they all needed to put the matter 'behind them.'" FAC ¶ 22, at 8. The FAC states that the corrections officers also asked Vasquez "if he was going to have 'problems' because he" had been housed in the Corrections Department's mental health unit. FAC ¶ 18, at 6-7. Vasquez alleges that he informed Angel Sanchez and Andres Sanchez "that there was fallout from the Clayton issue, and that the reason that he was placed [in the mental health unit] was because he had been stabbed at NENMDF/Clayton previously." FAC ¶ 18, at 7.

The FAC alleges that "within an hour after the Sanchez brothers had placed Plaintiff in E-Pod at GCCF Plaintiff was jumped by several inmates in the E-Pod and was stabbed and had to be transported for emergency medical care to a hospital." FAC ¶ 19, at 7. See FAC ¶ 48, at 21 (alleging that the fact that he was "almost immediately stabbed after being processed and placed in a cell block by" Angel Sanchez and Andres Sanchez "is at a minimum suspect timing"). The

FAC alleges that, after Vasquez was attacked and pressed the emergency call button, help did not arrive for "approximately twenty minutes," and, as a result, Vasquez "suffered a second beating." FAC ¶ 23, at 8. Vasquez alleges that this delay was the result of Angel Sanchez and Andres Sanchez "ignoring the panic button and allowing Plaintiff to get beaten and stabbed." FAC ¶ 24, at 8.

The Defendants argue that Vasquez' allegations against Angel Sanchez and Andres Sanchez are too conclusory to state a claim and therefore Angel Sanchez and Andres Sanchez are entitled to qualified immunity. See MTD at 9-11. To overcome qualified immunity, Vasquez must: (i) plausibly allege a violation of a Constitutional right; and (2) demonstrate that the right was clearly established at the time of the alleged violation. See Frey v. Town of Jackson, 41 F.4th 1223, 1232 (10th Cir. 2022). "A right is clearly established 'when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains.'" Truman v. Orem City, 1 F.4th 1235. Courts "may address either prong first to achieve 'the fair and efficient disposition of each case.'" Frey v. Town of Jackson, 41 F.4th at 1232 (quoting Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011)). Opting to address the clearly established prong first, the Court concludes that "it is clearly established . . . that labelling a prisoner a snitch constitutes deliberate indifference" under the Eighth Amendment. Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001). Accordingly, at the time of the alleged inmate attack, Angel Sanchez and Andres Sanchez would have understood, based on existing precedent from the Supreme Court and the Tenth Circuit, that their alleged actions violated Vasquez' Eighth Amendment rights. See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).

Turning to the second prong of the qualified immunity analysis, the Court must apply "the Iqbal/Twombly standard to determine whether Plaintiff stated a plausible constitutional violation." Frey v. Town of Jackson, 41 F.4th at 1232.  Accordingly, in assessing the MTD, the Court must accept as true all well-pled factual allegations in the FAC, view those allegations in the light most favorable to Vasquez, and draw all reasonable inferences in Vasquez' favor.  See Tellabs, Inc. v. Makor Issues & Rts, Ltd., 551 U.S. at 322; Smith v. United States, 561 F.3d at 1098.  Nonetheless, the Court must "not assume as true allegations that are legal conclusions, formulaic recitations of elements, or naked assertions devoid of further factual enhancement."  Crane v. Utah. Dep't of Corr., 15 F.4th at 1303.  The Court's task, therefore, is to determine whether the FAC contains sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570.  Vasquez' claims have "facial plausibility" sufficient to survive a motion to dismiss "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  Having considered closely each of the FAC's properly pled factual allegations against Angel Sanchez and Andres Sanchez, the Court concludes that he has "not nudged [his] claims across the line from conceivable to plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. at 570.

The Supreme Court has outlined a "two-pronged approach" that "a court considering a motion to dismiss" may follow.  Ashcroft v. Iqbal, 556 U.S. at 679.  Under this two-pronged approach, the Supreme Court advises that courts identify first the conclusory allegations that are not entitled to a presumption of truth and then determine whether the remaining well-pled factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.  Accordingly, the Court will "begin by identifying pleadings that, because they

are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. at 679.  First, the FAC here contains several "legal conclusions" and "formulaic recitations of elements," that the Court will "not assume as true allegations." Crane v. Utah. Dep't of Corr., 15 F.4th at 1303.  Vasquez' claim that Angel Sanchez and Andres Sanchez "acted with deliberate indifference," FAC ¶ 24, at 8, and in "retaliation" for Vasquez' complaints, FAC ¶ 20, at 7, like the conclusory allegation of an unlawful agreement not to compete in Bell Atl. Corp. v. Twombly, are nothing more than "formulaic recitation[s] of the elements of" an Eighth Amendment claim. 550 U.S. at 555.

In addition, the FAC includes a number of "naked assertions devoid of further factual enhancement," the veracity of which the Court will not presume.  Crane v. Utah. Dep't of Corr., 15 F.4th at 1303.  Vasquez' allegation that Angel Sanchez and Andres Sanchez informed inmates in the Unit E-1 Pod that Vasquez is a rat, which Vasquez makes "[u]pon opinion and belief," FAC ¶ 19, at 7, and that they "ignored his calls for help," are "bare assertions" that are "conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. at 681.  In Al-Owhali v. Holder, 687 F.3d 1236 (10th Cir. 2012), the Tenth Circuit declined to afford the presumption of veracity to a similar claim that the Tenth Circuit concluded was "lacking any factual context."  687 F.3d at 1243.  The Tenth Circuit reasoned that the plaintiff's "allegation that he was 'restricted from receiving [a] book'" in violation of his Constitutional rights, was insufficient where the plaintiff had not, for example, "indicated that prison officials had informed him that he could not receive the book or that he had explicitly requested it and received no response."  687 F.3d at 1243. Vasquez similarly has not alleged how he arrived at his "opinion," FAC ¶ 19, at 7, that Angel Sanchez and Andres Sanchez informed other inmates that he was a rat and "concedes that no one in Unit 1-E Pod after he was placed there by the Sanchez brothers informed him that the Sanchez

brothers had informed them that he was a 'rat,'" Response at 3.   "[B]y stating his belief that" Angel Sanchez and Andres Sanchez set Vasquez up for attack in the Unit E-1 Pod in retaliation for his complaints against them "while also admitting that he was not informed" that they had done so, Vasquez "merely highlight[s] the theoretical basis of his claim."  Al-Owhali v. Holder, 687 F.3d at 1243.   Likewise, Vasquez has provided no factual context for his claim that Angel Sanchez and Andres Sanchez "ignore[d] the panic button" when Vasquez pressed it and "allow[ed] him to get stabbed."  FAC ¶ 24, at 8.   He has not alleged, for example, that Angel Sanchez and Andres Sanchez were responsible for responding to calls from the Unit E-1 Pod nor how he knows that they ignored his call for help.   See Al-Owhali v. Holder, 687 F.3d at 1243 ("Al-Owhali did not face a high threshold to establish his claims.  But a mere assertion that he believes that there is a secret policy in place that prevents him from obtaining [a] book is not enough."); Walker v. Hickenlooper, 627 F. App'x 710, 715 (10th Cir. 2015)("Mr. Walker's allegations on information and belief provide no plausible basis to believe that Mr. Falk knew the alternative source was contaminated.").[6]  Accordingly, Vasquez' bare factual assertions are "too speculative" and conclusory to credit as truthful.  Al-Owhali v. Holder, 687 F.3d at 1243.

---

[6]Walker v. Hickenlooper, 627 F. App'x 710 (10th Cir. 2015), is an unpublished opinion, but the Court can rely on a Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . [a]nd we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Walker v. Hickenlooper, Brown v. Narvais, 265 F. App'x 734 (10th Cir. 2008), Fisher v. Oklahoma Dep't of Corr., 213 F. App'x 704 (10th Cir. 2007), Marin v. King, 720 F. App'x 923 (10th Cir. 2018),

The Supreme Court's analysis in <u>Ashcroft v. Iqbal</u> illustrates why Vasquez' bare assertions of the Sanchez brothers' knowledge and causal responsibility are insufficient for rule 12(b)(6)'s purposes.  In <u>Ashcroft v. Iqbal</u>, the Supreme Court presumed as true the plaintiff's allegations that the FBI arrested and detained thousands of Muslim men following the September 11, 2001, terrorist attacks, but declined to afford the same presumption to the Plaintiff's allegations that petitioner Robert Mueller was "the 'principal architect' of this invidious policy" and was "'instrumental' in adopting and executing it."  556 U.S. at 680-81.  Likewise, here, as described below, the Court assumes as truthful Vasquez' claim that Angel Sanchez and Andres Sanchez placed Vasquez in a pod where he was later attacked and that he waited twenty minutes for help to arrive following the attack.  The Court declines, however, to credit Vasquez' conclusory assertions that it was Angel Sanchez and Andres Sanchez who purposefully brought about the attack and the delay in assistance.  Vasquez has not alleged, for example, that he heard Angel Sanchez or Andres Sanchez tell other inmates that he was a rat, nor has Vasquez alleged that Angel Sanchez and Andres Sanchez knew that he would be at risk in the Unit E-1 Pod or that they were monitoring the panic button when Vasquez was attacked.  <u>See Ashcroft v. Iqbal</u>, 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").  These allegations, therefore, bring the FAC "close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 546.

---

<u>Rozenberg v. Knight</u>, 542 F. App'x 711 (10th Cir. 2013), <u>Lewis v. Clark</u>, 577 F. App'x 786, 801 (10th Cir. 2014), <u>Hull v. State of N.M. Taxation & Rev. Dept. Motor Vehicle Div.</u>, 179 F. App'x 445 (10th Cir. 2006), and <u>Boyd v. Werholtz</u>, 443 F. App'x 331 (10th Cir. 2011) have persuasive value with respect to a material issue and will assist the Court in its disposition of this Memorandum Opinion and Order.

Of course, the conclusory allegations in the FAC "can provide the framework of a complaint," so the Court must now consider Vasquez' "well-pleaded factual allegations, . . . assume their veracity[,] and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.  Vasquez' non-conclusory and well-pled factual allegations may be summarized as follows: Upon Vasquez' arrival at Guadalupe Correctional, Angel Sanchez and Andres Sanchez, against whom Vasquez had previously filed grievances and a federal lawsuit in relation to an incident of alleged excessive force involving the two corrections officers, processed Vasquez.  See FAC ¶¶ 14-18, at 5-7.  At this time, Angel Sanchez and Andres Sanchez questioned Vasquez about the lawsuit, informed him that they all needed to put the matter behind them, and asked Vasquez whether they were going to have problems, because Vasquez had been placed in the Corrections Department's mental health unit following an incident at a previous detention facility in Clayton, New Mexico.  See FAC ¶¶ 18, 22, at 7-8.  Angel Sanchez and Andres Sanchez then put Vasquez in the Unit E-1 Pod where, an hour later, Vasquez was attacked and stabbed by other inmates.  See FAC ¶¶ 19, 48, at 7, 21. Although Vasquez pressed the emergency call button, it took approximately twenty minutes for help to arrive.  FAC ¶ 23, at 8.  To state an Eighth Amendment claim against Angel Sanchez and Andres Sanchez for failing to protect him from the attack he suffered, Vasquez "must show that he is incarcerated under conditions posing a substantial risk of serious harm . . . and that the prison official was deliberately indifferent to his safety." Verdencia v. Adams, 327 F.3d 1171, 1175 (10th Cir. 2003).  Vasquez may also meet this standard by establishing that Angel Sanchez and Andres Sanchez labeled him a snitch.  See Benefield v. McDowall, 241 F.3d at 1271 ("[L]abeling an inmate a snitch satisfies the Farmer standard, and constitutes deliberate indifference to the safety of that inmate."); Brown v. Narvais, 265 F. App'x 734, 736 (10th Cir. 2008)("[A]llegations of a

prison officer's deliberate disclosure of dangerous information about an inmate's status are sufficient to state a claim under the Eighth Amendment provided the alleged danger is facially concrete and plausible enough to satisfy basic pleading standards.").

Against this legal and factual backdrop, the Court concludes that the well-pled factual allegations that Vasquez puts forth to support his claim do not enable "the court to draw the reasonable inference," Ashcroft v. Iqbal, 556 U.S. at 678, that Angel Sanchez and Andres Sanchez informed other inmates that he was a rat or otherwise failed to protect him in violation of the Eighth Amendment. For example, that Angel Sanchez and Andres Sanchez questioned Vasquez about the pending lawsuit and informed him that they should put the matter behind them makes it possible to infer that the corrections officers were unhappy about the litigation, but it does not make it plausible that Angel Sanchez and Andres Sanchez then had Vasquez attacked. See FAC ¶ 22, at 8. That Vasquez was attacked shortly after his interaction with the Angel Sanchez and Andres Sanchez is insufficient to "nudge[ his] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. at 570. As Vasquez acknowledges, the timing of his attack is "at minimum suspect timing," but without further factual context, it is no more. FAC ¶ 48, at 21. Likewise, the only non-conclusory fact that Vasquez puts forth regarding his contention that Angel Sanchez and Andres Sanchez allowed him to be attacked, is that it took twenty minutes for help to arrive. See FAC ¶ 24, at 8; Fisher v. Oklahoma Dep't of Corr., 213 F. App'x 704, 708-09 (10th Cir. 2007)("Plaintiffs' allegations that Mr. Yott read their letters to the other inmates intending that those inmates would injure plaintiffs are conclusory.").

In Benefield v. McDowall, the plaintiff survived a motion to dismiss his Eighth Amendment claim that prison staff labeled him a snitch to other inmates by alleging specific facts that a staff member "show[ed] other inmates a letter he allegedly wrote, indicating that he was

giving information to the prison investigations staff." 241 F.3d at 1270.  Similarly, in <u>Brown v.</u>

<u>Narvais</u>, 265 F. App'x 734 (10th Cir. 2008), the complaint provided a description that the plaintiff

heard the defendant corrections officer inform his cell mate that he was a "child molester."  265

F. App'x at 735.    Here, by contrast, the well-pled allegations Vasquez puts forth about Angel

Sanchez and Andres Sanchez' actions "encompass a wide swath of conduct, much of it innocent,"

<u>Robbins v. Oklahoma</u>, 519 F.3d at 1247, and "do not permit the court to infer more than the mere

possibility of misconduct," <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.  <u>Compare</u> <u>Parker v. Taylor</u>, No.

CIV 21-3146, 2021 WL 5038781, *4-5 (D. Kan. October 28, 2021)(Crow, J.)(concluding that the

plaintiff's conclusory allegations that a corrections officer "'made it known to other inmates that

[Plaintiff] was state evidence and a snitch'" did not state a valid Eighth Amendment claim (quoting

the record)(alteration in <u>Parker v. Taylor</u>)), <u>with</u> <u>Houck v. Denham,</u> No. CIV 15-0894, 2017 WL

11425592, at *8 (D. Colo. March 27, 2017)(Tafoya, M.J.)(reasoning that the plaintiff alleged

sufficient facts that a corrections officer "violated his Eighth Amendment rights by stating, during

a meeting . . . and in front of 26 other inmates, that he was a 'predator of children'" (citing the

record)).

   In addition to the conclusory nature of Vasquez' allegations, Vasquez' claims against

Angel Sanchez and Andres Sanchez contain an additional inadequacy.  In the context of § 1983

claims against multiple government actors, "'[i]t is particularly important . . . that the complaint

make clear exactly <u>who</u> is alleged to have done <u>what</u> to <u>whom</u>, . . . as distinguished from collective

allegations . . . .'"  <u>Kan. Penn Gaming, LLC v. Collins</u>, 656 F.3d 1210, 1215 (10th Cir.

2011)(quoting <u>Robbins v. Oklahoma</u>, 519 F.3d at 1250)(emphases in <u>Kan. Penn Gaming, LLC v.</u>

<u>Collins</u> and in <u>Robbins v. Oklahoma</u>).  Vasquez makes no particularized claims against either

Angel Sanchez or Andres Sanchez, but rather alleges each one of his claims against both Angel

Sanchez and Andres Sanchez collectively.  See FAC ¶¶ 14, 18-20, 22, at 6-8.  The FAC's collective allegations that both Angel Sanchez and Andres Sanchez asked him specific questions, informed other inmates he was a rat, and ignored his calls for help, render it is impossible to discern exactly which Defendant is alleged to have taken which action against Vasquez.  See Robbins v. Oklahoma, 519 F.3d at 1250 ("Given the complaint's use of . . . a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").  The Court cannot therefore discern from Vasquez' collective allegations any "specific actions taken by particular defendants."  Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 532 (10th Cir. 1998).  See Tavasci v. Cambron, No. CIV 16-0461, 2017 WL 3173011, at *24 (D.N.M. May 31, 2017)(Browning, J.)(concluding that the defendant's "collective allegation" that multiple Corrections Department employees failed to make reasonable accommodations was insufficient to state a claim against any one of the individual defendants).  For these reasons, even viewed in the light most favorable to Vasquez, the "mere assertion that he believes," Al-Owhali v. Holder, 687 F.3d at 1243, that Angel Sanchez and Andres Sanchez retaliated against him by having him attacked is not enough to state a valid Eighth Amendment claim.

**B.    VASQUEZ DOES NOT STATE AN EIGHTH AMENDMENT CLAIM AGAINST MARQUEZ AND TAFOYA-LUCERO.**

Next, Vasquez alleges that Marquez and Tafoya-Lucero violated his Eighth Amendment rights by failing to supervise corrections officers who "use inmates to beat and stab other inmates." FAC ¶ 57, at 35-36.  Specifically, Vasquez alleges that Marquez and Tafoya-Lucero "allowed the Sanchez brothers to retaliate against" Vasquez and did not "tak[e] procedures at the prison to prevent violent assaults by inmates against other inmates."  FAC ¶ 21, at 7-8.  Vasquez alleges

that Marquez and Tafoya-Lucero failed to "review . . . the litigation history between Plaintiff and the Sanchez brothers," FAC ¶ 21, at 8, and "allowed correction officers like the Sanchez brothers to hold positions which allow them to retaliate against inmates," FAC ¶ 41, at 14-15. More generally, Vasquez alleges that Marquez and Tafoya-Lucero "are and were personally aware that inmates are subject to excessive force at the hands of employee-correction officers." FAC ¶¶ 35-37, at 11-12. See Reply at 7-9. The Defendants respond that Marquez and Tafoya-Lucero are entitled to qualified immunity, because Vasquez' conclusory allegations do not plausibly establish that Marquez and Tafoya-Lucero were "deliberately indifferent to a substantial risk of serious harm." Motion at 11-12.

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011). Section 1983, however, "does not authorize liability under a theory of respondeat superior." Schneider v. City of Grand Junction Police Dept., 717 F.3d 760, 767 (10th Cir. 2013). "The Tenth Circuit recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations." Green v. Padilla, 697 F. Supp. 3d 1115, 1183 (D.N.M. 2023)(Browning, J.). Accordingly, to state a supervisory claim, the plaintiff must establish "an 'affirmative link' between the supervisor and the constitutional violation." Schneider v. City of Grand Junction Police Dep't, 717 F.3d at 767 (citing Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010)). This standard requires "more than 'a supervisor's mere knowledge of his subordinate's' conduct." Schneider v. City of Grand Junction Police Dep't, 717 F.3d at 767 (quoting Ashcroft v. Iqbal, 556 U.S. at 677). Rather, a plaintiff must satisfy "three elements . . . to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3)

- 43 -

state of mind." Schneider v. City of Grand Junction Police Dep't, 717 F.3d at 767. Because Vasquez has not plausibly alleged that Marquez or Tafoya-Lucero caused the alleged Constitutional violation nor that they were deliberately indifferent to a substantial risk of harm, Vasquez has not stated a claim against them under the Eighth Amendment.

As to the required element of personal involvement, many of Vasquez' claims that Marquez and Tofoya-Lucero allowed Angel Sanchez and Andres Sanchez to retaliate against him and that Marquez and Tofoya-Lucero were aware of the excessive force the corrections officers subjected inmates to are too conclusory to properly allege Marquez and Tofoya-Lucero's personal involvement. See FAC ¶¶ 35-37, 41, at 11-12, 14-15; Vasquez v. N.M. Dep't of Corr., No. CIV 22-0522, 2024 WL 1282766, at *7 (D.N.M. March 26, 2024)(Strickland, J.)("Plaintiff focuses extensively on the alleged generalized failure of Defendants Tafoya Lucero and Martinez to discipline corrections officers accused of violence, absent any specific details." (emphasis in original)). Vasquez does, however, allege specifically that Marquez and Tafoya-Lucero failed to review the "litigation history" between him and Angel Sanchez and Andres Sanchez, and thus alleges that Marquez and Tafoya-Lucero had some, if minimal, personal involvement in the alleged events leading up to the assault. FAC ¶ 21, at 8. See Dodds v. Richardson, 614 F.3d at 1195 ("Personal involvement does not require direct participation because § 1983 states any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable." (quotations and alteration omitted)). Cf. Pena v. Bd. of Cnty. Comm'rs for Cnty. of Cibola, No. CIV 22-0516, 2024 WL 3617539, at *3 (D.N.M. August 8, 2024)(Strickland, J.)("Plaintiff makes no allegations regarding the personal involvement of either Defendant Rosa or Saavedra in the series of events leading up to Peña's death.").

As to element two, causation, "'[a] plaintiff [must] establish the requisite causal connection by showing the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'" Schneider v. City of Grand Junction Police Dep't, 717 F.3d at 768 (quoting Dodds v. Richardson, 614 F.3d at 1195-96)(second alteration in Schneider v. City of Grand Junction Police Dep't). Vasquez' supervisory claim against Marquez and Tafoya-Lucero falters under this prong for two reasons. First, for Vasquez to successfully allege causation of a Constitutional violation, he "must first plausibly allege that a constitutional violation has taken place." Pena v. Bd. of Cnty. Commissioners for Cnty. of Cibola, 2024 WL 3617539, at *3. See Marin v. King, 720 F. App'x 923, 941-42 (10th Cir. 2018)("When a § 1983 plaintiff pursues a claim of supervisory liability, he must show the subordinate violated his constitutional rights -- a supervisor cannot be liable if the subordinate did not commit a violation."). As discussed in Section I.A., supra, at 32-42, Vasquez has not successfully pleaded a Constitutional violation against Angel Sanchez or Andres Sanchez, whom Vasquez alleges Marquez and Tafoya-Lucero supervised, and thus has not cleared this hurdle. Second, even if Vasquez properly had stated a claim that Angel Sanchez or Andres Sanchez violated his Eighth Amendment rights, he has not plausibly alleged that Marquez and Tafoya-Lucero "set in motion a series of events that the [they] knew or reasonably should have known would cause" Angel Sanchez or Andres Sanchez to violate Vasquez' Constitutional rights. Schneider v. City of Grand Junction Police Dep't, 717 F.3d at 768 (quoting Dodds v. Richardson, 614 F.3d at 1195-96). See Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs., 727 F.3d 917, 926 (9th Cir. 2013)("The only allegations that mention Hill are that, 'on information and belief,' he 'direct[ed]' the other defendants to take the actions that form the basis of the complaint.").

The FAC's only specific allegation on this issue is, again, that Marquez and Tafoya-Lucero did not review the fact that Vasquez had previously filed a lawsuit against Angel Sanchez and Andres Sanchez.  FAC ¶ 21, at 8.   Vasquez has not alleged, however, that by failing to conduct such a review Marquez and Tafoya-Lucero reasonably should have known Angel Sanchez or Andres Sanchez would seek to violate Vasquez' rights.  For example, Vasquez has not alleged that a litigation review is required by Corrections Department policy, that it would have been unreasonable for Marquez and Tafoya-Lucero to allow Angel Sanchez and Andres Sanchez to process Vasquez in light of the pending lawsuit, or that there have been other instances of Corrections Department staff retaliating against inmates that would have put Marquez and Tafoya-Lucero on notice of the risk that Vasquez faced.  See Vasquez v. Jones, No. CIV 20-0612, 2024 WL 492409, at *4 (D.N.M. February 8, 2024)(Brack, J.)("Vasquez does not plead facts to show there were other instances of inmate-on-inmate violence, delayed treatment, or inadequately treated injuries at the hands of poorly trained healthcare professionals.  Consequently, he fails to show Jones or Tafoya Lucero knew or should have known that their failure to hire and train staff 'would cause others to deprive [Vasquez] of [his] constitutional rights.'" (quoting Schneider v. City of Grand Junction Police Dep't, 717 F.3d at 779)).

Finally, as to element three, allegations of deliberate indifference suffice to establish the requisite state of mind for an Eighth Amendment violation claim brought under Section 1983.  See Est. of Booker v. Gomez, 745 F.3d 405 (10th Cir. 2014).   Accordingly, Vasquez must plausibly allege that Marquez and Tafoya-Lucero acted "'with deliberate indifference that a constitutional violation would occur.'"  Dodds v. Richardson, 614 F.3d at 1195 (quoting Serna v. Colo. Dep't of Corr., 455 F.3d 1146 (10th Cir. 2006)).  This rule means that Marquez and Tafoya-Lucero must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and . . . must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.  Vasquez bare

allegations that Marquez and Tafoya-Lucero knew of and allowed Angel Sanchez and Andres

Sanchez' misconduct are too conclusory to establish that Marquez and Tafoya-Lucero acted with

the requisite mental state.  See Vasquez v. New Mexico Dep't of Corr., 2024 WL 1282766, at *8

("While Plaintiff repeatedly asserts that Defendants Tafoya Lucero and Martinez were

knowledgeable as to the general risk of corrections officers committing violence against

inmates . . . he has alleged no facts which would lend credence to those allegations, which are

otherwise wholly conclusory.").  Moreover, Vasquez' single well-pled fact in relation to Marquez

and Tafoya-Lucero, that they did not review the litigation history between Vasquez and Angel

Sanchez and Andres Sanchez, tends to establish that Marquez and Tafoya-Lucero were unaware

that Vasquez was at risk.  See Rozenberg v. Knight, 542 F. App'x 711, 714 (10th Cir.

2013)(concluding that the plaintiff had "not alleged with specificity that Knight was aware of or

deliberately indifferent to a substantial risk of harm to him," where the plaintiff did "not allege any

facts supporting an inference that Knight was aware of a particular risk to him"); Lewis v. Clark,

577 F. App'x 786, 801 (10th Cir. 2014)("As to state of mind, he does not advance any factual

allegations to support his conclusory statements that the unknown attorneys possessed a culpable

state of mind.").

Furthermore, while the Court understands Vasquez' Eighth Amendment claim against

Marquez and Tafoya-Lucero to be based on supervisory liability, to the extent that Vasquez alleges

that Marquez and Tafoya-Lucero are individually liable for violating Vasquez' Constitutional

rights, Marquez and Tafoya-Lucero are entitled to qualified immunity.  Under the first qualified

immunity prong, as the Court has discussed, Marquez and Tafoya-Lucero did not fail to act despite

their knowledge of a substantial risk of serious harm by failing to review Vasquez' litigation

history.  See Farmer v. Brennan, 511 U.S. at 842.  Under the second prong of the qualified immunity analysis, "[i]t is clearly established that specific conduct violates a constitutional right when Tenth Circuit or Supreme Court precedent would make it clear to every reasonable officer that such conduct is prohibited."  Perea v. Baca, 817 F.3d 1198, 1204 (10th Cir. 2016).  In addition, the Supreme Court and the Tenth Circuit have held that certain conduct is so egregious that it renders "the violation . . . so obvious that our own . . . cases g[i]ve respondents fair warning that their conduct violate[s] the Constitution."  Hope v. Pelzer, 536 U.S. 730, 741 (2002).  See Browder v. City of Albuquerque, 787 F.3d 1076, 1082 (10th Cir. 2015).  Here, Vasquez has directed the Court to no precedent establishing that failing to assess whether an inmate has filed a lawsuit against corrections officers he or she interacts with violates the Eighth Amendment, and failure to make this assessment is not conduct so egregious that Marquez and Tafoya-Lucero would have been on notice that their failure violated the Constitution.  In sum, Vasquez has not stated plausibly a claim that Marquez or Tafoya-Lucero violated his Eighth Amendment rights by failing to supervise Angel Sanchez and Andres Sanchez or by directly infringing on Vasquez' Eighth Amendment rights, and, accordingly, Marquez and Tafoya-Lucero are entitled to qualified immunity.

## II.    VASQUEZ DOES NOT STATE AN EIGHTH AMENDMENT CLAIM OR A REHABILITATION ACT CLAIM AGAINST ANY DEFENDANT IN RELATION TO THE GRIEVANCE PROCEDURES.

Vasquez's FAC brings Eighth Amendment claims and claims for violations of § 504 of the Rehabilitation Act against Sedillo, Fajardo or Hagerman, Tafoya-Lucero, and the Corrections Department in relation to the Corrections Department's allegedly inadequate grievance procedures.  See FAC ¶¶ 58-68, at 36-43.  Vasquez' Eighth Amendment claims fail, because inadequate grievance procedures do not amount to a Constitutional violation.  Similarly, Vasquez

does not state a claim under § 504 of the Rehabilitation Act, because he has not alleged facts demonstrating that he suffered discrimination because of his mental health issues. The Court concludes, therefore, that dismissal of Vasquez' grievance-related claims is appropriate.

### A.   VASQUEZ DOES NOT STATE A CLAIM THAT THE GRIEVANCE PROCESS VIOLATES THE EIGHTH AMENDMENT.

Vasquez alleges that the inadequate grievance procedures and specific actions taking by various Defendants to implement and oversee the grievance process violate his Eighth Amendment Rights.  See FAC ¶¶ 58-59, at 36-39.  The FAC alleges that the Defendants "implemented and required inmates at PNM to use a grievance system to complain about safety and medical issues that was meant to defeat the claims of inmates."  FAC ¶ 58, at 37.  Vasquez specifically alleges that Sedillo "rejected" the grievance that he filed after his assault "as not timely filed," even though Vasquez alleges that it was timely, FAC ¶ 26, at 9; see FAC ¶ 45, at 19, failed to provide Vasquez with "notice of receipt of the grievance" as Corrections Department policy requires even though he "admitted" that he was aware of the grievance, FAC ¶ 27, at 9, and "did not provide assistance to" Vasquez in filing his grievances, FAC ¶ 54, at 28.  The FAC alleges that Vasquez filed a grievance with Fajardo or Hagerman "[b]ecause of the inappropriate behavior of Daniel Sedillo," and that Marquez, Tafoya-Lucero, and Fajardo or Hagerman "maintain[] a grievance system which did not and does not allow the Plaintiff and others similarly situated to grieve beatings . . . ."  FAC ¶ 43, at 15-16.  See id. ¶ 40, at 14.  Vasquez further alleges that Sedillo and Tafoya-Lucero "purposely manipulate the grievance process to prevent inmates like Plaintiff from filing legitimate grievances and court action."  FAC ¶ 43, at 15-16.

More generally, the FAC contains allegations that the Defendants "have taken advantage of Plaintiff's low IQ," "refused to allow Plaintiff to file grievances," and "have been consistent in

improperly processing Plaintiff's grievances."  FAC ¶¶ 44-45, at 17-18.  In addition, Vasquez alleges that the grievance process is "overly complex [and] confusing," and "allows NMCD to deny grievances based on hyper-technical procedural defects rather than the merits."  FAC ¶ 52, at 23.  Specifically, Vasquez alleges that the grievance procedures are inadequate, because inmates "do not have the benefit of legal assistance," FAC ¶ 54-A-1, at 24, or assistance from Corrections Department staff when filing grievances, FAC ¶ 54-B, at 27-29.  Finally, Vasquez contends that the Corrections Department interferes with the grievance process and violates its own policies by "allowing employees that are a party to a grievance . . . [to] participate in the grievance," FAC ¶ 54-C, at 29-30, by failing to provide "forms for inmate grievances," FAC ¶ 54-D, at 30, by using "deliberately vague, confusing and conflicting grievance policies," FAC ¶ 54-E, at 30-31, and by failing to prevent staff from retaliating against inmates who file grievances, FAC ¶¶ 54-H-I, at 32.

The Court concludes that Vasquez fails to show an Eighth Amendment violation as to any Defendant.  As an initial matter, because the Corrections Department is a state agency, it "cannot be sued under Section 1983 as it is not a 'person' for the purposes of Section 1983."  Vasquez v. Tafoya-Lucero, No. CIV. 20-612, 2023 WL 110974, at *5 (D.N.M. January 5, 2023)(Sweazea, J.)(quoting 42 U.S.C. § 1983), report and recommendation adopted, No. CIV 20-612, 2023 WL 2012504 (D.N.M. Feb. 15, 2023)(Brack, J.).  See Hull v. State of N.M. Taxation & Rev. Dept. Motor Vehicle Div., 179 F. App'x 445, 446 (10th Cir. 2006); Gallegos v. Bernalillo Cnty. Bd. of Comm'rs, No. CIV 16-0127, 2017 WL 3575883, at *38 (D.N.M. August 17, 2017)(Browning, J.).  The individual Defendants sued in their official capacities are likewise immune from suit under the Eleventh Amendment where they are named in their official capacity, because these Defendants are state-agency employees.  See Hull v. N.M. Tax'n & Revenue Dep't

Motor Vehicle Div., 179 F. App'x 445 (10th Cir. 2006)("[S]tate officials acting in their official capacities . . . are immune from § 1983 damages suits.").

Moreover, Vasquez' general allegations that Marquez, Tafoya-Lucero, and Fajardo or Hagerman maintain and oversee and inadequate grievance process, which they manipulate to prevent inmates from seeking relief for harms they suffer, are too conclusory to state a claim against these defendants under § 1983, because they do not "make clear exactly who is alleged to have done what . . . ." Robbins v. Oklahoma, 519 F.3d at 1250.  Vasquez does not allege who takes advantage of him and refuses to allow him to file grievances, see FAC ¶¶ 44-45, at 17-18, nor provide any factual basis for his naked assertions that the Defendants "purposely manipulate the grievance process," FAC ¶ 43, at 15-16.  See Ashcroft v. Iqbal, 556 U.S. at 678; Walker v. Hickenlooper, 627 F. App'x at 716 ("The term 'conclusory' refers to the expression of 'a factual inference' without including 'the underlying facts on which the inference is based.'" (quoting Black's Law Dictionary (10th ed. 2014))).  Indeed, that Vasquez' allegations are premised largely on his conclusory statements that he has been prevented from availing himself of the grievance system is undercut by the FAC's statements that Vasquez "has filed numerous grievances, appealed those grievances, and sought relief from state and federal courts regarding the outcome of the grievances, which demonstrates access to and use of the grievance system." Vasquez v. Tafoya-Lucero, 2023 WL 2012504, at *4.  To the extent that Vasquez' allegations can be construed as supervisory claims, i.e., that Marquez, Tafoya-Lucero, and Fajardo or Hagerman violated Vasquez' Constitutional rights by failing to supervise Sedillo and other grievance officers, Vasquez has not established these Defendants' "personal involvement," by plausibly alleging they had any connection to the alleged denials or any knowledge of their supervisees' actions. Schneider v. City of Grand  Junction Police Dep't, 717 F.3d at 767.  See Gallagher v. Shelton, 587

F.3d 1063, 1069 (10th Cir. 2009)("Because Gallagher's only allegations involving these defendants relate to the denial of his grievances, he has not adequately alleged any factual basis to support an 'affirmative link' between these defendants and any alleged constitutional violation.").

In contrast, Vasquez pleads well several factual allegations against Sedillo in relation to the June 29, 2022, grievance Vasquez filed after he suffered the assault at Guadalupe Correctional. See FAC ¶¶ 25-27, 45, 54-B-22, at 8-9, 19, 28. Nonetheless, Vasquez' Eighth Amendment claim against Sedillo -- and, concomitantly, his Eighth Amendment claims against Marquez, Tafoya-Lucero, and Fajardo or Hagerman were Vasquez to have alleged sufficient facts as to these defendants -- fail as a matter of law. First, Vasquez' claims that Sedillo's denial of his grievance, without more, amounts to an Eighth Amendment violation is inconsistent with Tenth Circuit precedent, see Walker v. Hickenlooper, 627 F. App'x at 715 ("[W]e have squarely held that a prison official's denial of a grievance cannot create liability under § 1983."), because the denial of a grievance, "does not establish personal participation under § 1983," Gallagher v. Shelton, 587 F.3d at 1069. Likewise, Vasquez' allegations that Sedillo rejected his grievance as not timely filed, see FAC ¶ 26, at 9, failed to forward the grievance to Guadalupe Correctional as required, see FAC ¶ 26, at 9, did not provide Vasquez with notice that he had received the grievance, see FAC ¶ 7, at 9, and provided Vasquez with no assistance in filing his grievance, see FAC ¶ 54-B, at 28, do not state an Eighth Amendment claim.

As the Court has discussed, to establish an Eighth Amendment claim, an inmate must plausibly allege that the defendant was deliberately indifferent to a substantial risk of serious harm by showing both that the inmate suffered, objectively, a sufficiently serious harm, and, subjectively, that the defendant knew of and disregarded the risk of harm. See Sawyers v. Norton, 962 F.3d at 1283. Here, Vasquez' factual allegations do not establish that he suffered harm

"ris[ing] to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." Burke v. Regalado, 935 F.3d 960, 991 (10th Cir. 2019). The Eighth Amendment guards against injuries that deprive inmates of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. at 347. These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety." Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008). Sedillo's alleged actions and, moreover, the general inadequacies that Vasquez has identified in the grievance procedures are not "sufficiently serious," Farmer v. Brennan, 511 U.S. at 834, to rise to the level of a deprivation of a "basic human need," Rhodes v. Chapman, 452 U.S. at 347. See Vasquez v. Tafoya-Lucero, 2023 WL 2012504, at *4-5 (concluding that Vasquez' allegations regarding the Corrections Department's grievance process did not amount to an Eighth Amendment violation, because the defendants' actions did not constitute a specific deprivation of a human need). Furthermore, Vasquez does not allege that Sedillo, by failing to acknowledge, forward, or grant Vasquez' grievance, knew that he was subjecting Vasquez to a "substantial risk of serious harm" and disregarded that risk. Burke v. Regalado, 935 F.3d at 992. See Vasquez v. Jones, 2024 WL 492409, at *5 (concluding that Vasquez' allegation that a grievance officer failed to forward a grievance about his medical treatment did not amount to an Eighth Amendment violation, because Vasquez did not "demonstrate either that his medical condition was sufficiently serious or that Rodriguez was aware that her conduct posed a substantial risk of serious harm to Vasquez"). Accordingly, Vasquez' allegations that the Corrections Department's grievance process and individual Defendants' actions relating to the grievance process violates his Eighth Amendment rights are legally insufficient. See Gonzales v. New Mexico Corr. Dep't, No. CIV 18-0107, 2020 WL 6316344, at *6 (D.N.M. October 28, 2020)(Herrera, J.)("A prison officer's failure to adequately respond to a prisoner's grievance does not implicate a constitutional right.").

At bottom, even if Vasquez had properly alleged an Eighth Amendment violation based on the grievance system, the individually named Defendants are entitled to qualified immunity. To overcome qualified immunity, a plaintiff must not only allege facts demonstrating that the officials violated a federal constitutional or statutory right, but also that the right was clearly established at the time of the defendant's conduct. See Sawyers v. Norton, 962 F.3d at 1282. A right is clearly established if: (i) Supreme Court or Tenth Circuit, or the weight of authority from other courts, see Truman v. Orem City, 1 F. 4th at 1235, "place[s] the statutory or constitutional question beyond debate," Ashcroft v. al-Kidd, 563 U.S. at 741; or (ii) the conduct was "particularly egregious" such that "any reasonable officer should have realized" it was unlawful, Taylor v. Riojas, 592 U.S. at 9. Vasquez has not identified any precedent that would have put the Defendants on notice that their grievance-process conduct was violative of the Eighth Amendment. Cf. Boyd v. Werholtz, 443 F. App'x 331, 332 (10th Cir. 2011)("[T]here is no independent constitutional right to state administrative grievance procedure . . . ."). In addition, the Defendants' alleged actions are not so egregious that any reasonable officer would have realized they were violating Vasquez' Eighth Amendment rights. Cf. Taylor v. Riojas, 592 U.S. at 8-9 ("[N]o reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for such an extended period of time."). In conclusion, Vasquez has not stated an Eighth Amendment claim arising out of the grievance procedures and the Defendants are entitled to qualified immunity.

### B.    VASQUEZ DOES NOT STATE A CLAIM UNDER § 504 OF THE REHABILITATION ACT.

Last, Vasquez alleges that the inadequate grievance procedures also violate § 504 of the Rehabilitation Act.  See FAC ¶¶ 60-68, at 39-43.  Vasquez points specifically to the fact that he was not provided with assistance in filing his grievances, see FAC ¶ 63, at 40, and that his grievances were denied on "pre-textual grounds because of" his disability, see FAC ¶ 64, at 41.  According to the FAC, these denials are the result of an "unwritten policy by NMCD" to "punish" inmates with mental health issues for "offending behaviors that are a manifestation of their . . . mental health issues."  FAC ¶ 65, at 42.  See id. at ¶ 54, at 35.  The FAC alleges that "[w]hen Plaintiff appealed his denials they have been ignored or summarily denied without investigation because of his disability."  FAC ¶ 64, at 42.  Vasquez alleges that, by providing a grievance system that inmates do not understand, see FAC ¶ 66, at 42, failing provide inmates with assistance, see FAC ¶¶ 62-63, at 40, "improperly processing Plaintiff's grievances," FAC ¶ 45, at 18; see id. at ¶ 49, at 22, and "refus[ing] to allow Plaintiff to file grievances," FAC ¶ 44, at 17, the Defendants violate § 504.  Vasquez alleges that "[t]he NMCD is discriminating against inmates solely on their disabilities that drive their disruptive and problematic behaviors."  FAC ¶ 68, at 43.  Vasquez contends that, because this discrimination was intentional, he is entitled to damages under the Rehabilitation Act.  See FAC ¶ 64, at 41.  For the reasons described below, the Court concludes that Vasquez has not alleged sufficient facts to state a claim under § 504 of the Rehabilitation Act.

To allege a claim under the Rehabilitation Act, the plaintiff must demonstrate that: (i) he or she is handicapped under the Act; (ii) he or she is otherwise qualified to participate in the program; (iii) the program receives federal financial assistance; and (iv) the program discriminates against plaintiff based upon his or her disability.  See Hollonbeck v. U.S. Olympic Comm., 513

F.3d at 1194.  The fourth prong requires the plaintiff to allege "the Defendants discriminated against them 'solely by reason of' their disability."  Baumeister v. N.M. Comm'n for the Blind, 425 F. Supp. 2d 1250, 1266 (D.N.M. 2006)(Smith, M.J.)(quoting 29 U.S.C. § 794(a)).  In the Rehabilitation Act and the similar Americans with Disabilities Act ("ADA")[7] context, "[c]ourts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." J.V. v. Albuquerque Pub. Sch., 813 F.3d 1289, 1295 (10th Cir. 2016).  Vasquez has not stated a claim that the grievance process discriminates against him in any way or that any alleged discrimination was "based upon" his disability.  Havens v. Colo. Dep't of Corr., 897 F.3d at 1262. First, the only statements in the FAC that Vasquez has faced intentional discrimination are too conclusory to state a plausible claim and constitute only a "formulaic recitation of the elements of a cause of action," and, moreover, lack any factual context.  Ashcroft v. Iqbal, 556 U.S. at 678. See, e.g., FAC ¶ 68, at 43 ("[The NMCD is discriminating against inmates solely on their disabilities that drive their disruptive and problematic behaviors.").  Second, while "a claim for disparate impact doesn't require proof of intentional discrimination," Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George, 685 F.3d 917, 922 (10th Cir. 2012), it does require that the plaintiff alleged that "a specific policy caused a significant disparate effect on a protected group," Reinhart v. Lincoln Cnty., 482 F.3d 1225, 1229 (10th Cir. 2007).  Here too, Vasquez' only allegations that inmates with disabilities are treated differently -- for example, Vasquez' allegation that there is an "unwritten policy" of denying disabled inmates' grievances "as punishments on the inmates," FAC

---

[7]To state a claim for disability discrimination under the Rehabilitation Act, a plaintiff may prove the same elements required to prevail under Title II of the ADA, because Congress has directed courts to construe the ADA as giving at least the same amount of protection as the Rehabilitation Act. See Nielsen v. Moroni Feed Co., 162 F.3d 604, 608 n.7 (10th Cir.1998).

¶ 65, at 42 -- are too conclusory to state a plausible claim, Al-Owhali v. Holder, 687 F.3d at 1243 (concluding that the plaintiff's "mere assertion that he believes that there is a secret policy in place" is insufficient to state a claim).

Third, a public entity "must provide a reasonable accommodation under the ADA when it knows that the individual is disabled and 'requires an accommodation of some kind to participate in or receive the benefits of its services.'" J.V. v. Albuquerque Pub. Sch., 813 F.3d at 1299 (quoting Robertson v. Las Animas Cnty. Sheriff's Dep't, 500 F.3d at 1197).  Here, while Vasquez alleges that he was not offered assistance in preparing his grievances, he has not alleged that any Defendants knew that he was disabled nor that he requested any accommodation.  See J.V. v. Albuquerque Pub. Sch., 813 F.3d at 1299 ("Because they failed to request an accommodation . . . this claim fails."); Rigler v. Lampert, 248 F. Supp. 3d 1224, 1245 (D. Wyo. 2017)(Skavdahl, J.)("Plaintiff offers no facts to indicate he was ever denied access to any benefits or services offered by the Wyoming Department of Corrections.").  Moreover, Vasquez' allegations that he filed numerous grievances and appeals, including filing grievances against individuals for improperly denying other grievances, undercut somewhat a claim that he required accommodations to enjoy "meaningful access" to the grievance process.  "Section 504 seeks to assure evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance. The Act does not, however, guarantee the handicapped equal results" from participation in such programs and services.  Havens v. Colo. Dep't of Corr., 897 F.3d at 1263; Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 146 (1st Cir. 2014)(holding, in the context of a prisoner's claim against a prison system, that § 504 "entitle[s] [a disabled individual] to reasonable accommodations, not to optimal ones finely tuned to his preferences").

At bottom, even if Vasquez alleged facts demonstrating that he had been discriminated against, he states only conclusory allegations that the discrimination he alleges was "based upon" his disability, as § 504 requires.  Havens v. Colorado Dep't of Corr., 897 F.3d at 1262.  See, e.g., FAC ¶ 64, at 42 ("When Plaintiff appealed his denials they have been ignored or summarily denied without investigation because of his disability.").  In conclusion, the Court concludes that Vasquez has not stated a claim under § 504 claim, because he has not alleged sufficiently that the Defendants discriminated against him on the basis of his disability.  See Vasquez v. Tafoya-Lucero, 2023 WL 2012504, at *4 (concluding that Vasquez' allegations "that NMCD 'took advantage' of his mental disabilities by denying his grievances, refusing to allow him to file grievances, and refusing to allow his grievances to be processed . . . do not constitute a claim that NMCD denied Vasquez access to services, programs, or activities or that any such denial was because of his disability" in violation of the Rehabilitation Act).

**IT IS ORDERED** that: (i) the Defendants' Motion to Dismiss Amended Complaint for Violation of Constitutional Rights and Request for Declaratory and Injunctive Relief as it Pertains to the Fourteenth and Eighth Amendment Violations and Discrimination Under the Americans with Disabilities Act and for Qualified Immunity, filed October 10, 2022 (Doc. 16), is granted; (ii) the Plaintiff's Amended Complaint for Violation of Constitional [sic] Rights and Request for Declaratory and Injunctive Relief as it Pertains to the Fourteenth and Eighth Amendment Violations and Discrimination Under the Americans with Disabilties [sic] Act, filed September 12, 2022 (Doc. 11), is dismissed with prejudice; and (iii) all Plaintiff Robert Vencent Vasquez' claims against the Defendants are dismissed with prejudice.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Shavon M. Ayala
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Jason Michael Burnette
Kari E. Cole
Lindsay Fay Van Meter
GermanBurnette & Associates, LLC
Albuquerque, New Mexico

     *Attorneys for the Defendants*